THE PEOPLE ex rel. THORNTON FLOYD TURNER v. WILLIAM PLIMLEY, Commissioner of Jurors.

(Supreme Court, New York Special Term, June, 1896.)

1. Jurors — Nonresidents doing business in New York city.

   The legislature has power to determine that a substantial, actual residence within the county for a period of time which it may fix should constitute a residence qualifying a person for the performance of jury duty, although his actual domiciliary residence was elsewhere.

2. Same.

   A person who resides and does business in the city of New York during the time prescribed by section 1080 of the Code is subject to jury duty, although he spends the summer months and votes in another State.

MOTION for mandamus to compel the striking of relator's name from the jury list.

Herbert B. Turner, for relator.

Francis M. Scott, counsel to the corporation (Thomas E. Rush, of counsel), for respondent.

BEEKMAN, J. Section 1079 of the Code of Civil Procedure prescribes the qualifications of trial jurors in the city and county of New York. Among these is the requirement that such a juror must be a male citizen of the United States and a resident of that city and county. Section 1080 provides that, "A per-

son dwelling or lodging in the city and county of New York for the greater part of the time between the 1st day of October and the 30th day of June next thereafter is a resident of that city and county for the jury year within the meaning of the last section, and it is not necessary that he should have been assessed or should have voted there."

This has been the law in this State for twenty-six years, the first provision on the subject being found in chapter 539 of the Laws of 1870, entitled "An act in relation to jurors in the city and county of New York." The reason for the enactment is a matter of common knowledge. For many years it had been the practice of a large number of persons who were residents in fact of this city to acquire a legal domicile in other parts of the State and in other States, usually at their places of summer abode, which, while technically good, still in no respect changed their practical relations to this community. Their business continued to be conducted here, their social pleasures and attachments were still sought and maintained here, and their actual residence continued here, except during the summer months, when considerations of health and recreation rather than political attachment led to a short sojourn at the legal domicile. This was done for the purpose of escaping taxation and jury service in this county. Provision has been made by statute intended to foil the attempt to avoid taxation by this expedient, although, perhaps, with indifferent success; and it was with the same deterrent purpose in respect to attempts to evade jury service that section 1080 of the Code was enacted.

The relator concededly comes within the letter of this section. He resides in this city during the period therein mentioned, and conducts his business, which is that of an architect, here. He spends the summer months at Englewood, in the State of New Jersey, and votes in that State. It is fair to him to say that he was born in the State of New Jersey, and apparently has always treated that State as his legal domicile. Having been placed by the commissioner of jurors upon the list of those qualified as trial jurors within this city, he now applies to this court for a *mandamus* to compel the commissioner to strike his name therefrom, on the ground that he is not a citizen of this State, and that for this reason the legislature is without power to compel him to serve in that capacity here. His counsel has furnished the court with a very able and erudite argument reviewing the history of

trial by jury for the purpose of establishing his contention that at common law only those who were of the vicinage could be impaneled as trial jurors, and that this means that such persons must be citizens of the State and residents of the county in which they are called upon to act.

I think we may eliminate from discussion the idea that a citizen of the United States resident in one State is in any sense whatsoever an alien or foreigner in respect to citizens of other States. Citizenship of the United States carries with it such constitutional guaranties that what is now known as citizenship of a State is acquired by mere residence at the volition of the individual. No additional naturalization is required, nor is any oath of allegiance necessary, so that a change of citizenship from one State to another is merely a change of domicile. Now there is nothing in the Constitution of the United States which prohibits a State from treating those who are within its borders, although legally domiciled elsewhere, in the same manner as its own citizens. Section 2 of article 4 provides that citizens of each State shall be entitled to all of the privileges and immunities of citizens in the several States, and by the fourteenth amendment, as it is called, all persons born or naturalized in the United States and subject to the jurisdiction thereof are declared to be citizens of the United States and of the State wherein they reside, and a positive inhibition is laid upon each State against making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States.

While the protection of person and property and the right to pursue any legal calling are thus secured to each citizen of the United States as a matter of right in every State of the Union, on a footing of full equality with the citizens of such State, I see no reason why a State in which such person may have a substantial, although not a domiciliary, residence may not exact from him the performance of some of those political duties which rest upon those who are legally domiciled there. It certainly is not unreasonable for the State to expect some return for the protection which it affords. The argument against this, on the ground that the State is compelled by the Constitution of the United States to afford such protection, and, therefore, does not render it as a voluntary act for which it is entitled to expect a proper consideration, is not entitled to much, if any, weight. The United States Constitution assumes only to forbid discrimi-

nation by a State against nonresidents, leaving the latter sub- .
stantially in all other respects to the full exercise of its sovereign
power. ·

I think, therefore, there is no constitutional objection in the
way of the enactment and enforcement of the section of the Code
under examination in its application to persons in the same situa-
tion as the relator. If he has an actual concrete residence within
the county for a sufficient length of time to give it a substantial
character, I see no reason why he may not be considered as of the
vicinage within the meaning of that term as applied to a juror
at common law; and it seems to me to be quite within the power
of the legislature to determine that a substantial, actual residence
within the county for a period of time which it may fix, shall
constitute a residence qualifying such person for the performance
of jury duty.

The only case which I have been able to find that may be con-
sidered as at all in point is one which was decided in the Supreme
Court of the District of Columbia. United States v. Nardello,
4 Mackay, 503. In that case the right of a juror to sit in a
criminal case was challenged. It appeared that his home was in
the State of Virginia, where his parents lived, and that he voted
there. For many years he had been in the habit of spending his
annual vacation at his home, but during the rest of the year he
actually resided at Washington, where he was in business as agent
for a Virginia corporation, and he had no intention of leaving
his employment in that city. It also appeared that whenever he
had been out of employment he returned to his home in Virginia.
The court overruled the objection, holding that upon those facts
he was to be considered as a resident of the District of Columbia,
and was, therefore, eligible to serve as a juror therein under an
act of Congress prescribing the qualifications of a trial juror to
be citizenship of the United States and residence within the dis-
trict. A remark of Judge Merrick in delivering the opinion in
this case is worthy of repetition: "It will not do to say that
one shall have of a community all that he can get within the
community, and on the other hand shall not return to the com-
munity some corresponding obligation of citizenship."

I am, therefore, of the opinion that the commissioner of jurors
acted within his power in placing the relator upon the jury list,
and that the motion should, therefore, be denied.

Motion denied. .