Demurrer allowed, and final judgment entered thereon in favor of defendant.

---

## Court of General Sessions—City and County of New York.

February, 1902.

## THE PEOPLE v. JOHN J. SCANNELL AND WILLIAM L. MARKS.

(37 Misc. 345.)

1. INDICTMENT—U. S. CONSTITUTION, FIFTH AMENDMENT.

The fifth amendment to the federal constitution, which declares that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury does not apply to the States, but only to the federal govern-

ment and courts, but article 1, section 6, of the State constitution does apply, and where a district attorney elects to prosecute a misdemeanor by indictment he must do so through the medium of a legally constituted grand jury and by an indictment that is good at law, both as to form and substance, and defendants charged with misdemeanor have a legal right to raise the question of the illegal character of the grand jury which found the indictment.

2. SAME—GRAND JURY.

When a grand jury has been selected and drawn according to law, and has been impanelled and sworn and recognized by the court as the grand jury, and an indictment, legal and formal on its face, is presented by that body, a record is thereby made which has in fact all the sanctions required by the constitution and the laws, and in the absence of convincing proof beyond all reasonable doubt that the grand jury has either by mistake or intention imposed a manifest and substantial wrong upon the defendant, and that the apparent record is not in fact the true record of the court, it should not be vacated or set aside upon a suggestion that a mere technical or hypothetical wrong has been sustained.

3. SAME.

The fact that two members of the grand jury, one of whom had been excused from serving and the other of whom withdrew after hearing some of the testimony but took no part in the finding of the indictment, were perhaps not actual residents of the county when the indictment was found, does not invalidate it.

MOTION to quash and set aside indictments.

Nicoll, Anable & Lindsay and Myers, Goldsmith & Bronner, for motion.

Eugene A. Philbin, District Attorney (Samuel H. Ordway, of counsel), opposed.

GOFF, R.: On November 22, 1901, the grand jury presented an indictment for conspiracy against the defendants, Scannell and Marks, and two indictments against the defendant Scannel for neglect of duty. Each of these indictments charged a misdemeanor. Subsequently, on being arraigned for pleading, the defendants interposed a plea in abatement on grounds included in the present motion. This plea was overruled. Then the defendants moved to quash and set aside the indictments on the

following grounds: First, that the grand jury was not a constitutional or a legally constituted grand jury, in that two of its members were not residents of the county of New York; secondly, that the indictments are void because a member of the grand jury who was not a resident of the county was present and participated in the proceedings; thirdly, that the indictments were not found, indorsed and presented as required by section 268 and 272 of the Criminal Code; fourthly, that a member of the grand jury who was not a resident of the county was permitted to be present at the sessions of the grand jury while the charges embraced in the indictment were under consideration, in violation of sections 262, 263, 264 of the Code; fifthly, that the evidence submitted to the grand jury did not warrant the findings of the indictments; and, sixthly, that incompetent and illegal testimony was introduced before the grand jury. And they further move that the court institute an inquiry to ascertain and determine the places of residence of the two members of the grand jury referred to, and for that purpose to subpoena them and such other persons as may be competent to testify on the matters in question. The third ground is based upon the contention that because there were two non-residents of the county impaneled the grand jury was an illegal body, and, therefore, a legal indictment was not " found " nor concurred in by twelve grand jurors, nor indorsed " a true bill," nor signed by the foreman. That all these requirements were formally complied with is not disputed. The fourth ground is based upon the contention that because one of the grand jurors was a non-resident his presence during the proceedings was unauthorized by law, and, therefore, the proceedings were vitiated. These two grounds are but specifications of the first and second, and must stand or fall with them.

It has not been pointed out in what respect the evidence taken before the grand jury is insufficient, incompetent or illegal; consequently, nothing has been adduced in support of the fifth and sixth grounds. This leaves the first and second grounds the only ones to be considered.

Those parts of the moving affidavits referring to the proceedings in court before the making of the present motion are irrelevant and will not be considered.

An objection, preliminary in its nature, is interposed by the district attorney, which, if sustained, necessarily destroys the defendants' case on this motion.

The defendants claim that the indictments were not found by a legally constituted grand jury and that, therefore, they cannot be put upon trial because of the guaranty in the fifth amendment to the Federal constitution, which declares that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury.   To this a sufficient answer is found in the decisions of the courts holding that this amendment does not apply to the States, but only to the Federal government and courts.   Hurtado v. People, 110 U. S. 516; McNulty v. California, 149 id. 645; Livingston v. Mayor, 8 Wend. 85.

The further claim is made that the indictments, having been found by an illegal grand jury, are void, and that the defendants are protected from prosecution by article 1, section 6, of our State constitution, which declares that no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury.   This provision of the constitution, the prosecution says, cannot be invoked by the defense, for the reason that it applies only to infamous crimes, and since the defendants are charged with misdemeanors only, and could be proceeded against by information instead of by indictment, defects in the personnel of the grand jury are immaterial, and, even though they exist, no constitutional rights of the defendants have been violated.

It is true that protection against criminal prosecution, unless by the intervention of a grand jury, is guaranteed by the constitution only in cases of felony, and that the defendants, being charged with misdemeanors, could have been prosecuted by information.   Yet the district attorney, having elected to proceed by indictment instead of by information, must be deemed to

have contemplated an indictment found by a legally constituted grand jury.    The defendants may be brought into court either by information or by indictment; but, by whichever method, they must be legally charged with the commission of a crime. If by indictment, the pleading must be in the form of and must contain the essentials prescribed by law, and if an indictment for misdemeanor be defective in form or substance, the fact that the constitution did not require prosecution for misdemeanor by indictment would not make good that which was bad.    So, if an indictment for misdemeanor be found by an illegally constituted grand jury, it follows that it is not a legal pleading on which a prosecution can be instituted.    There is but one grand jury, and that is the one referred to in the constitution, and the formation of which is regulated by statute, and if a body of men be organized into a grand jury without authority of law it would not be a legal grand jury, and any indictment found by it, whether for felony or misdemeanor, could not sustain a criminal prosecution.    When, in a case of misdemeanor, a district attorney elects to prosecute by indictment, he must do so through the medium of a legally constituted grand jury and by an indictment that is good at law, both as to form and substance.    To admit a different contention would lead to a conclusion, impossible under our law, that, for a misdemeanor, a district attorney could prosecute by an insufficient indictment, found by an illegal grand jury.    I am, therefore, of opinion that the defendants have a legal right to raise the question of the illegal character of the grand jury that found the indictments.

A clear understanding of the questions raised requires their orderly arrangement into, first, the object and effect of the motion, and, secondly, the merits upon which it rests.    Plainly, the object is to assail the record of the court and to effect a destruction of that which is now a verity.    The record of the court, and the proceedings of which it is bound to take judicial notice, are as follows:    On the 8th of December, 1900, the board for the selection of grand jurors certified to the selection, from the

list produced by the commissioner of jurors of persons qualified
to serve as jurors in the county of New York, of 996 persons
to serve as grand jurors for the different terms of the Court of
General Sessions during the year 1901.    This was in pursu-
ance of chapter 484 of the Laws of 1895.    On the 9th day of
October, 1901, by order of court, a panel of fifty persons, from
the list so selected, was drawn to serve as grand jurors for the
November term of the court (Code Crim. Pro., secs. 225, 227,
Laws of 1895, chap. 484), and on the first day of the term
twenty-three of the persons so drawn were impaneled and sworn
as the grand jury of the county for that term of the court.
Code Crim. Pro., sec. 236.

No individual grand juror was challenged for any cause.
During that term of court the grand jury, so impaneled and
sworn, found and presented in court true bills of indictment
against the defendants.    It is not questioned that all the pro-
ceedings up to and including the filing of the indictments were
in form regular and according to law.    Here, then, is a judicial
record of a court of original and competent jurisdiction, which
proves itself, and it is sought to be disproved by affidavits con-
taining allegations, not as to the facts upon which the record
is founded, nor as to anything appearing on the face of the
record, but as to matters *dehors* the record.    Can this be done?
A judicial record is not a thing so sacred that it is inviolable
from attack for any cause, nor is it beyond the power of the
court to correct, amend or vacate a record where justice requires
it; but it must be presumptively regarded and accepted as the
truth, and should not be impugned except upon proof beyond
a reasonable doubt that, by fraud or mistake, it is not in fact
what it purports to be, and that it works a substantial injustice
to the defendants.

The record of a court as to the impaneling and proceeding of
a grand jury and the finding of an indictment, like other records
proves itself.    It is of such validity that, as a general rule, no
fact can be averred against it, and only in extraordinary cases
will contradiction be allowed, as when the falsity of the record

works a manifest and substantial injustice to the defendants, which the court, in the interests of justice, is bound to redress. In such case the facts contradicting the record must be made out to the entire satisfaction of the court, so as to leave no doubt on the subject. Rutland's Case, 6 Coke, 53, 3 Black. Com. 351; United States v. Terry, 39 Fed. Rep. 355; Low's Case, 4 Greenl. 439-453.

The recital in the indictment that the grand jury of the county of New York accused the defendants of a crime is a record, and, therefore, presumptive proof that the grand jury is of the county; and it will be presumed that persons returned as grand jurors are qualified, and the burden of proving the incompetency of a grand juror, whose disqualification does not appear on the face of the record, rests upon the defendant. Webb v. State, 1 Shannon (Tenn.), 427; State v. Perry, 122 N. C. 1018; State v. Easter, 30 Ohio, 542.

It is true that ANDREWS, J., in People v. Petrea, 92 N. Y. 144, in delivering the opinion of the court, said: "If the defect in the constitution of the tribunal, deprived it of the character of a grand jury in a constitutional sense, there can be no doubt that the court would have been bound to take notice of it although no statute authorized it, or even if the statute assumed to preclude the raising of the objection. But when the defect is not of that character and the defendant may be held to answer the indictment without invading any constitutional right, then the question is one of procedure merely." Even if it be conceded that this is *obiter*, yet the opinion of that learned jurist is entitled to very great respect, and, if need be, it is rendered more lucid by reading in connection with it other parts of the same opinion, wherein he said: "He (the defendant), was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body, drawn, summoned and sworn as a grand jury, before a competent court and composed of good and lawful men. This we think fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury selected and

organized under the forms of law.     The defects in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant.     We confine our decision upon this point to the case presented by the record, and hold that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury within the sense of the constitution, although the law under which the selection was made, is void." In the case at bar the record shows, and, therefore, the legal presumption is, that the grand jury that found the indictments was " selected and organized under the forms of law," and was " recognized by the court and sworn as a grand jury," and, therefore, was a legal grand jury, competent to find indictments, and the constitutional requirement that the defendant should not be held to answer for a crime unless on indictment of a grand jury was complied with.

In People v. Jewett, 3 Wend. 314, defendant was indicted for conspiracy, and a motion to quash was made on the grounds (1) that the grand jury was improperly selected because of the exclusion of members of a certain society; and (2) that two of the grand jurors were incompetent, having, before their being impaneled, formed and expressed a hostile opinion as to the guilt of the defendant.     SAVAGE, Ch. J., in delivering the opinion of the court, said: " The books are silent on the subject of such exception after indictment found, and in the absence of authority, I am inclined to say, in consideration of the inconvenience and delay which would unavoidably ensue in the administration of criminal justice, was a challenge to a grand juror permitted to be made after he was sworn and impaneled, that the objection comes too late."

In People v. Hooghkerk, 96 N. Y. 149, the defendant was held to answer, and, before the grand jury was sworn or impaneled, filed a written protest or objection, under oath, against the swearing or recognition by the court of the persons summoned as grand jurors as a grand jury, on the ground that they

were not drawn or summoned as required by law.   The court reaffirmed its ruling in People v. Petrea, supra, that the law which provided for the selection of grand jurors in the particular county was unconstitutional, but that, notwithstanding, a defendant indicted by a grand jury so selected might be properly put upon trial.   The only question, therefore, left open was whether the defendant could take the objection to the grand jury before indictment which, in the Petrea case, it was held he could not take after indictment.   In discussing this question the court said, that "By section 238 (Crim. Code), a challenge to the panel or array of grand jurors is prohibited, but the section authorizes the court in its discretion to discharge the panel for causes specified. . . . Section 239 authorizes a challenge to be interposed to an individual grand juror for certain specified causes. . . . The power conferred by section 238 is in the general interest of public justice, that conferred by section 239 is in the particular and special interest of the person accused.   The objection interposed to the panel in this case in behalf of the defendant was in the nature of a challenge to the array, and a right of a defendant to challenge the body of the grand jury because irregularly or defectively constituted, no longer exists, and we find no provision of law permitting a defendant to raise any objection to the grand jury, except an objection to individual jurors under section 239."   The objection in the case at bar is that the grand jury that found the indictment was not a constitutional or legally constituted grand jury.   This, the Court of Appeals says, is in the nature of a challenge to the array, and the right of the defendant to challenge the body of the grand jury no longer exists, hence there is no provision of law permitting a defendant to raise any objection to the grand jury except an objection to individual jurors.   If this declaration of the law precludes a defendant from raising such objection before indictment, does it not with greater force preclude a defendant from raising such objection after indictment?   It will be observed that section 239 of the Code, referred to by the court as

being in the special interest of the person accused, provides that a challenge to an individual grand juror may be interposed for one or more of six specified causes and for those only. The grounds of objection urged by defendants, on this motion, to two members of the panel, are not included in the six specified causes of challenge, and, therefore, they must be excluded as causes of challenge under the provisions of the Criminal Code.

It was held in Dolan v. People, 6 Hun, 494, that an objection to a grand juror must be intended as a challenge, that being the only mode known to the law of making such objection. Code Crim. Pro., sec. 359.

The question raised in People v. Shattuck, 6 Abb. N. C. 33, was not as to the constitutionality or illegality of the grand jury as a body, or the disqualification of any of its members, but as to the fact of an indictment having been found. It was contended by the defendant that in fact the grand jury had not voted to find an indictment. The learned judge held that if such an error occurred it was consistent with the general superintending power and duty of the court to institute an inquiry. An inquiry was instituted, and on the facts the motion was denied. The decision in this case cannot, as an authority, be extended beyond the particular facts presented.

In Low's case, 4 Greenl. 439, the defendant made a motion to set aside the indictment on the ground that twelve grand jurors did not concur, and he further moved that he be allowed to prove it by the testimony of the foreman. It appeared by the deposition of the foreman that when the indictment was found the grand jury acted under the belief that a majority vote was sufficient to find a bill. Being present at a subsequent term of court, he heard the presiding judge charge the grand jury that it required the concurrence of at least twelve to find an indictment. He then realized that he had made a mistake and disclosed the fact. The court held that an indictment of record has all the legal verity which belongs to that species of evidence and is of the certainty which a regular judicial record carries with it, but, from the necessity of the case, there must be a

power in the court to vacate or amend a record erroneously made by the court or any of its officers, and ruled that the motion should have been granted. But the court says: " It could only be in a very clear case; where it could be made to appear manifestly and beyond every reasonable doubt, that an indictment, apparently legal and formal, had not in fact the sanctions which the law and the constitution require, that the court would sustain a motion to quash or dismiss it, upon a suggestion of this kind."

In People v. Hulbut, 4 Den. 136, BRONSON, Ch. J., said: " The indictment when presented in due form by the grand jury, and filed in court, is a record; and like other records, imports absolute verity. It cannot be impeached unless it be done upon motion, by showing that it was not founded upon sufficient evidence, or that there was any other fault or irregularity in the proceedings."

The facts in the Low case were of an exceptional character. I have been unable to find a parallel. But even in that case the court recognized the principle of the inviolability of the record, and that an exception could arise only when such an extraordinary occurrence deprived the accused of his right to protection from trial, unless on indictment found by at least twelve grand jurors.

A distinction should be drawn between causes which may affect the qualification of an individual drawn or selected to serve as a grand juror and the act of a grand jury after being impaneled and sworn. Those causes which may affect the individual, if attention be not called to them at the proper time, will, in the absence of fraud, be deemed effaced when the individual becomes merged in the body of the grand jury, and thenceforth the court will regard the grand jury as a legal entity, and in that capacity only will its actions be inquired into. Were an accused permitted to assail an indictment on the ground of the disqualification of a particular grand juror who participated in its finding, the courts would be called upon to pass not only on the question of his residence, but whether

he was " a good and lawful man of the county," whether he or his wife was possessed of the necessary property qualification, whether he was in possession of his rational faculties and not infirm or decrepit, and whether he was free from all legal exceptions, intelligent, of sound mind and good character; and able to read and write the English language understandingly. These are the qualifications of a trial juror (Code Civ. Pro., sec. 1079), and they are also the qualifications of a grand juror. If, after indictment found, the gate be once opened to inquire into any one of the causes of disqualification as to an individual grand juror, when is it to be closed? If one cause be inquired into, why not another? The law does not attach greater importance to one than it does to the others, and if the rule be once established that, without charge of fraud or mistake, resulting in a manifest and substantial wrong, the court should, on motion of the defendant, institute an inquiry into the qualifications of grand jurors after indictment found, a condition would inevitably arise, from delays and obstructions generated by such a practice, that would be intolerable in the administration of criminal justice.

The decisions in other States upon the questions under consideration are as conflicting as they are numerous, and it would indeed be a task of magnitude for any mind to deduce from them a correct and controlling principle. As varied are the decisions as the standards of qualifications differ in the several jurisdictions, ranging from Wyoming, where women are qualified as grand jurors, to Utah, where polygamists are disqualified. So there is danger of false reasoning from a false premise by using an excerpt or *dictum* from the opinion of a learned jurist without regard to the laws of the jurisdiction or the facts of the case. And, in the same way, a rule prescribed by a text-writer may be quoted and repeated as a Medean law without regard to the then existing laws or to subsequent changing conditions. It is freely quoted from Hawkins' Pleas of the Crown: " If one of the grand jury, who find an indictment, be within any one of the exceptions in the statute, he vitiates

the whole, though never so many unexceptionable persons joined with him in finding it." 2 Hawk. P. C. C., secs. 25-28.

To fully appreciate the force and application of this rule a clear understanding should be had of the " exceptions in the statute " to which the writer referred.    The statute which was in force at the time he wrote was the 11 Henry 4, C. 9, which recited:  " That because inquests had been taken by persons who were outlawed for treason or felony, or who had found indictments for their advantage or lucre, therefore, that no indictment be henceforth made by any such person, but by inquests of the King's lawful liege people returned by the sheriff or bailiffs of franchises according to the law of England."  The evils which this law was meant to remedy do not exist under our institutions; and when a rule, designed to meet the exigencies of the times when outlaws, traitors, felons and villeins sat on grand juries, is cited as applicable to our times and conditions, it is likely to mislead.    But even under the law of England it was laid down that " those returned to serve on the grand jury must be good and lawful men and ought to be of the same county where the crime was committed, and, therefore, it is a good exception at common law to one returned that he is an alien or a villein, or that he is outlawed for a crime, but these exceptions must be taken before indictment."    Bac. Abr. Tit. Jur. A.

I have been unable to find—aided as I have been by the learning and research of counsel for defendants—in the whole history of English criminal law a case in which after indictment, an exception to an individual grand juror, on the ground of his being a non-resident of the county, was sustained.

Nor is there a case in our own State in which, after indictment, a disqualification of an individual grand juror attaching to him personally before he was sworn as a grand juror has been held to vitiate the indictment, and, while the question raised here has not been directly passed upon, yet a fair inference may be drawn from the opinion of the courts on cognate

questions that the weight of authority is decidedly antagonistic to the contention of the defendants.

Indeed, it has been decided that in any event this motion should not prevail, since it is not based upon any one of the causes enumerated in section 313 of the Criminal Code, which declares that for no other cause than one of those enumerated shall the indictment be set aside on motion of the defendant. People v. Rutherford, 47 App. Div. 209; People v. Willis, 23 Misc. Rep. 568; People v. Winant, 24 id. 361; People v. O'Connor, 31 id. 668; People v. Spolasco, 33 id. 530.

If, as was suggested in the latter case, a discretion is vested in the court, to be exercised in the interests of justice where a manifest injustice has been done, it cannot be invoked here, for there is an utter absence of any proof that the defendants have been in any way prejudiced.    In the cases arising in other States, and cited by defendants' counsel, where disqualification was alleged against an individual grand juror, the courts proceeded upon the theory that the disqualified juror, being in the grand jury room at the time the indictment was found, might have participated in and influenced the finding.    Here there is proof, which is not disputed, that neither of the grand jurors in question was in the grand jury room at the time the indictments were found, nor did either participate in the finding. One of them was excused early in the term from further service, by the judge presiding and was not present, and took no part whatever when at a later date testimony was taken, and the indictments found.    The other was present on the first day the testimony was taken, and, discovering that he knew some of the witnesses, withdrew, and was not present at any time on the second day when testimony was taken, nor was he present, nor did he participate in any way in the deliberations of the jury, or in the finding of the indictments.

Neither fraud, hostility, prejudice, nor the exercise of influence in any way, is charged against either of the gentlemen who have for many years served on the grand jury of this county, and who have not contributed by their presence, votes

or influence to the finding of the indictments against the defendants.

It is urged that a different standard of qualifications is required of a grand jury from that which is required of a petit juror, on the basis of section 223 of the Criminal Code, which reads: "A grand jury is a body of men returned, at stated periods from the citizens of the county." Emphasis is laid upon the words " citizens of the county." A literal adherence to these words would lead to what the law abhors, an absurdity. Citizenship may be conferred by a nation or State, but not by a political subdivision thereof. A county is a political subdivision of the State. It cannot confer citizenship, and it follows that there cannot be such a civic character as a citizen of a county. Prentiss v. Barton's Exrs., 1 Brock. 389, per MARSHALL, Ch. J. The true meaning, and that which is consonant with reason, is that the grand jury shall be drawn from the citizens of the United States who are of the county.

Standing alone, this section would be simply a definition, but read in connection with subsequent sections it forms part of a coherent plan for the organization of a grand jury. Section 225 prescribes the terms of court, i. e., the " stated periods," for which a grand jury shall be " returned," and section 229 provides for the composition of the grand jury, when it declares that " The mode of selecting grand jurors is prescribed by special statutes." These " special statutes " are incorporated in chapter 484, Laws of 1895, which provides that a board consisting of certain officials shall, at a specified time in each year, select from the list produced by the commissioner of. jurors of persons qualified to serve as jurors a certain number to serve as grand jurors for the ensuing year.

The qualifications of a trial juror are prescribed by section 1079, Code of Civil Procedure, to be, among other things, a male citizen of the United States, and a resident of the county; and section 1080 declares that " A person dwelling or lodging in the city and county of New York, for the greater part of the time, between the first day of October and the thirtieth day of

June . . . is a resident of that city and county for that jury year within the meaning of the last section (i. e., 1079), and it is not necessary, that he should have been assessed, or should have voted there." When the sections of the Criminal Code, the special statutes, and the sections of the Code of Civil Procedure are read together, it will be seen that a complete system is formulated which, in so far as the question under consideration is concerned, when reduced to a simple proposition, is that a citizen of the United States, who dwells or lodges in the county of New York for the greater part. of the time between the first of October and the thirtieth of June, is qualified to serve as a grand juror. It is not necessary to discuss or determine the question or domicile. Confusion arises from confounding domicile with residence for particular purposes. The conditions of residence may differ; for the purpose of probate, of marital obligations, of the right to sue and be sued, to hold public office, to exercise the franchise, to be assessed for personal taxes, or to be drawn for jury service. Stress is laid upon the charge that one of the grand jurors voted in another county. Even if he did, that of itself would not be controlling. The elective franchise is a privilege to be exercised at the will of the holder. Jury service, like the payment of personal taxes, is a duty which the individual owes to the community from which he receives protection and advantages for his personal and material interests.

The privilege belongs to the person, the duty is the property of the community. It is immaterial whether a citizen votes or is assessed in the county, if he is a resident of the county within the meaning of the statute for jury purposes. It was on this principle that People ex rel. Turner v. Plimley, 17 Misc. Rep. 457, was decided, where the relator, who was born in New Jersey, resided there for several months in the year and voted there, was held under the statute to be a resident of New York for jury purposes. This case was affirmed in 8 App. Div. 323, and in 150 N. Y. 571. To the same effect are United States v.

Marvello, 4 Mackey, 503, and United States v. Cross, 20 Dist. Col. 365.

Under the authority of the Turner case (supra), under the statutes cited and on the facts as presented by conflicting affidavits—with the burden of proof resting upon the moving party—I cannot say that it is satisfactorily established that either of the grand jurors was not a resident of the county for jury purposes.

I am not unmindful of the difficulties which beset the question, nor of the grave results to the administration of the criminal law in New York which would follow a judicial approval of defendants' contention, when it is remembered that the grand jury for that term of court presented 295 indictments.    While matters of expediency should not be considered where the law is clear and the wrong to the individual is manifest, yet, in the absence of express and binding authority, and where it is manifest that in any event the defendants have not sustained a substantial wrong, a court of first instance should be extremely cautious and be firmly convinced of the right of the case before departing from established practice and salutary principles. People v. Jewett, supra.

From the laws prescribing the qualifications and mode of selection of grand jurors for this county, from the sections of the Code of Criminal Procedure prescribing the time when and the causes for which the court may discharge a panel of grand jurors, also the time when and the causes for which a challenge to an individual grand juror may be interposed, also the causes for which an indictment may be set aside; from judicial authority and opinion in this State on cognate questions, and from reason itself, I believe the true principle, and the one that should be applied to the facts in this case, to be that when a grand jury has been selected and drawn according to law, and has been impaneled and sworn and recognized by the court as the grand jury, and an indictment, legal and formal

on its face, is presented by that body, a record is thereby made which has in fact all the sanctions required by the constitution and the laws, and that, in the absence of convincing proof beyond all reasonable doubt that the grand jury has either by mistake or intention imposed a manifest and substantial wrong upon the defendant, and that the apparent record is not in fact the true record of the court, it should not be vacated or set aside upon a suggestion that a mere technical or hypothetical wrong has been sustained.

In my opinion the motion should be denied.

Motion denied.