(70 Misc. Rep. 195.)

PEOPLE v. COCO.

(Supreme Court, Special Term, Queens County. December, 1910.)

1. GRAND JURY (§ 38*)—PRESENCE OF STENOGRAPHER—EFFECT ON INDICTMENT.

A person designated as temporary stenographer to a grand jury, in the absence of the official stenographer, is not required to be a resident of the county, under Code Cr. Proc. § 952q, providing that every stenographer appointed under that title should be a citizen and resident of the county where appointed.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 38.*]

2. GRAND JURY (§ 38*)—PRESENCE OF STENOGRAPHER—EFFECT.

One designated as temporary stenographer to a grand jury, even if lacking the prescribed qualifications, is a de facto officer, and his presence before the grand jury when evidence was taken would not vitiate the indictment.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 38.*]

Peter M. Coco was indicted by the grand jury, and moves to dismiss the indictment. Motion denied.

Joseph J. Tuohy, for the motion.

Edward R. O'Malley, Atty. Gen. (Arthur C. Train, Special Deputy Atty. Gen. of counsel), opposed.

KAPPER, J. The grand jury of Queens county found eight indictments against the defendant, which he now moves to set aside upon the ground that the grand jury stenographer was not a citizen and resident of Queens county which, the defendant says, are prerequisite qualifications, and that the taking by that stenographer of the testimony given before the grand jury upon which the defendant was indicted violated subdivision 2 of section 313 of the Code of Criminal Procedure, which requires the court to set aside an indictment "When a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections two hundred and sixty-two, two hundred and sixty-three and two hundred and sixty-four." Sections 262, 263, and 264 of the Code of Criminal Procedure only authorize the presence before the grand jury of the district attorney or one of his assistants. But, notwithstanding these explicit exceptions, the attendance of stenographers upon the grand jury has been authorized by statute since 1885 (Matter of Montgomery, 126 App. Div. 72, 110 N. Y. Supp. 793; People v. Steinhardt, 47 Misc. Rep. 252, 93 N. Y. Supp. 1026), and the codification of all statutes relating to grand jury stenographers permits their appointment by the district attorney in every county of the state and their attendance and presence at the sessions of the grand jury (Code Cr. Proc. § 952p et seq.)

The defendant does not complain of the presence before the grand jury of a stenographer, but says that the stenographer in question was both a citizen and a resident of New York county, and that, as

section 952q of the Code of Criminal Procedure provides that "Every stenographer appointed under the provisions of this title shall be a citizen and resident of the county in which he is appointed," the stenographer in question was disqualified, and hence was a person whose presence during the session of the grand jury which considered the charges against him was forbidden by section 313, supra. The answering affidavit on behalf of the people shows that the Governor directed the Attorney General to attend before the Queens county grand jury, summoned at the October, 1910, term of the Supreme Court, for the purpose of aiding in investigating certain alleged offenses by public officials and persons having public business with such officials, and that after an examination of upward of 100 witnesses the official stenographer became ill, whereupon the district attorney of the county temporarily designated the stenographer of whom the defendant now complains.

Section 952w of the Code of Criminal Procedure provides as follows:

"Designation of temporary stenographer. In case of the absence by reason of illness, or other cause, of the official stenographer to any grand jury in any county of this state, the district attorney of the county may designate a stenographer to perform the duties of such official stenographer during such absence, and the stenographer so designated shall receive the compensation which the official stenographer would have received for the same service, and the same shall be deducted from the salary of the official stenographer."

My reading of the section just quoted satisfies me that the Legislature intended to except a temporarily designated stenographer from the prerequisites of citizenship and residence in the particular county. Just what difference it makes whether a duly qualified and sworn grand jury stenographer is a citizen of one rather than of another county is not apparent to me; and, in view of the district attorney's confidential relation to the public interests, it may well be doubted whether the Legislature may so restrict him in his field of selection. People ex rel. Flood v. Gardiner, 157 N. Y. 520, 52 N. E. 564. But, be that as it may, the temporary designation of a stenographer to the grand jury, so far as concerns citizenship and residence in the county, can well be distinguished from the permanent appointment of an official stenographer. A number of reasons might be assigned for the distinction, of which one will suffice. If, on the last day fixed by the statute of limitations for the finding of an indictment, the official stenographer should be taken ill, the administration of the criminal law ought not to fall because the temporary services of a duly qualified stenographer resident in the county cannot be obtained. It will be noted that the section providing a temporary stenographer permits the district attorney to "designate a stenographer to perform the duties of such official stenographer" during the absence or illness of the latter, without any qualification whatever; while the section that fixes the residence qualification plainly refers to the stenographer who is "appointed" as the permanent or "official stenographer."

But, even though the temporarily designated stenographer were within the purview of the section fixing residence and citizenship as a prerequisite, the presence before the grand jury of one lacking those qualifications does not, in my opinion, invalidate an indictment. Such

a stenographer is, at least, a de facto official, and his service stands as a public act. If the district attorney himself, subsequently to the findings of the indictments, had his title to office successfully contested, his acts during his incumbency would be those of a de facto officer and would be upheld.

In People v. Petrea, 92 N. Y. 128, 143, the indictment was found by a grand jury drawn under a statute which the court held to be unconstitutional. But the indictment nevertheless was sustained as the finding of a de facto grand jury. The court say:

"We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body drawn, summoned, and sworn as a grand jury before a competent court and composed of good and lawful men. This we think fulfilled the constitutional guaranty. The jury which found the indictment was a de facto jury selected and organized under the forms of law. The defect in its Constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine our decision upon this point to the case presented by this record, and hold that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury within the sense of the Constitution, although the law under which the selection was made is void."

In People v. Scannell, 37 Misc. Rep. 345, 75 N. Y. Supp. 500, it was held that an objection to an individual grand juror that he was not a resident of the county where the indictment was found is not available after indictment found, nor can such a disqualification vitiate the indictment.

This being so of grand jurors, it follows that whether the stenographer was a resident and voter of the county cannot be inquired into after indictment for the purpose of setting it aside.

For the foregoing reasons, the motion should be denied; and, in reaching this conclusion, I am impressed with the serious results that would flow from a granting of the defendant's motion. The setting aside of these indictments would require a like ruling in the case of some 60 or more indictments, found and returned by the same grand jury against public officials of Queens county and others who have had dealings with such officials, besides nullifying the results of a mass of investigation carried on by the same grand jury since such indictments were returned. In this investigation upwards of 500 witnesses have been examined and the services of a special deputy Attorney General have been constantly enlisted for more than two months. The expense to the county and the labors of the patriotic citizens composing the grand jury have been enormous; and, while the legal rights of accused parties must be sedulously preserved, the public interests ought not to suffer on any such shadowy and unsubstantial ground as is here advanced.

Motion denied.