Harold J. Rothwax, J.
The defendants, Debra Colebut and Reggie Thomas, were indicted in November, 1975, and charged with murder in the second degree and other lesser offenses. Additionally, Thomas was charged with kidnapping in the first degree. These indictments fully supersede Indictment No. 2420/75 filed in July, 1975.
The defendants have moved to dismiss the indictments pursuant to CPL 210.20 (subd 1, par [c]) and CPL 210.35 (subds 1, 2, 3, 5), alleging that the indictments are defective on the grounds that (a) the evidence was presented to fewer than 16 grand jurors, and (b) a grand juror who heard none of the evidence may have voted to indict, or influenced those grand jurors who did vote.
I have reviewed the minutes of the Grand Jury proceedings and find them to be legally sufficient (CPL 190.65).
The minutes reflect that the Grand Jury met on three separate days over a period of two weeks; that substantially all of the testimony was received on the first day; that on the occasion of their second meeting, 10 days later, one witness was recalled briefly; and that the Grand Jury voted, without hearing further testimony, four days thereafter.
It further appears from the Grand Jury attendance record that on the first day 16 grand jurors were present and, of these, 14 were present for the vote on the third day. On the date of the vote 20 grand jurors were present in all. Of the 16 jurors present on the first day, one, the foreman, was a nonresident of this county. Sometime before the vote this was discovered and he was discharged.
The defendants contend that the inclusion of a nonresident juror on the panel requires a finding that the Grand Jury was *731 illegally constituted (CPL 210.35, subd 1) and that the proceeding was conducted and substantially all the evidence was presented to fewer than 16 grand jurors (CPL 210.35, subd 2; CPL 190.25, subd 1).
Subdivision 1 of section 596 of the Judiciary Law requires that jurors drawn for service in counties contained within cities with a population in excess of 1,000,000 be residents of that county. It was, therefore, proper to disqualify and discharge the nonresident foreman upon discovering his nonresidency. It is, however, clear that the mere inclusion of a nonresident juror in the panel does not, without more, void either the panel or the quorum.
Since 1883 the precedents in New York have consistently and invariably held that the de facto doctrine controls in a situation of the type presented by this motion. The rule was first stated in People v Petrea (92 NY 128, 143-144): "The jury which found the indictment was a de facto jury selected and organized under the forms of law. The defect in its constitution * * * affected no substantial right of the defendant. We * * * hold that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury within the sense of the Constitution, although the law under which the selection was made, is void.”
The determinations of the Grand Jury are not to be disturbed because of the existence of technical irregularities in its composition absent a showing of fraud in juror selection or deprivation of the defendant’s rights before the Grand Jury. The discovery that one or more grand jurors who participated in the proceedings of the panel were technically unqualified to sit is, alone, insufficient for dismissal of an indictment. (People v Petrea, supra [grand jurors drawn from list of petit jurors]; People v Youngs, 151 NY 210; People v Scannell, 37 Misc 345; People v Pizzimenti, 13 Misc 2d 82 [two grand jurors were government employees with salaries in excess of $1,000 per year]; People v Whalen, 26 Misc 2d 714 [Grand Jury foreman disqualified]; Matter of Pesner v County Ct. of County of Rockland, 42 AD2d 275 [improper extension of Grand Jury term]; People v White, 44 AD2d 749 [foreman a convicted felon]; People v AuClair, 74 Misc 2d 704.)
In the instant case there is no allegation of fraud or deprivation, and the disqualification of the foreman for nonresi *732 dence clearly falls within the purview of the de facto doctrine. I find, therefore, that this Grand Jury was legally constituted. This reasoning also disposes of the defendants’ second contention. Though on the first day there was a bare quorum of 16, including the foreman, a subsequent disqualification of a member of that quorum will not retroactively negate its existence if, as here, he was a de facto member of the jury. Therefore, on the day in question, the minimum number of jurors required was present.
In order to properly find an indictment, however, the CPL further requires the concurrence of at least 12 grand jurors (CPL 190.25, subd 1). The Court of Appeals has held that the Grand Jury is "privileged” to return an indictment where "[a]t least twelve of the Grand Jurors, who voted to indict, heard all essential and critical evidence” presented (People v Brinkman, 309 NY 974, 975, emphasis supplied).
In this case, as previously noted, only 14 of the 20 grand jurors present at the time the indictment was voted had heard the "essential and critical evidence.” This satisfies the requirements of Brinkman (supra) and, therefore, compels the denial of the defendant’s motion to dismiss. It raises issues which, however, warrant further discussion.
Under our system, as presently constituted, it is possible that jurors who have not heard substantially all of the evidence presented to the Grand Jury, may, nevertheless; vote to indict. Most homicide cases, and many other serious felonies in New York County, are not presented and submitted at one sitting, and often the Grand Jury does not resume the pn> ceeding until weeks later. During this interval the same panel may hear many other interrupted cases. When the case is finally continued, it is often necessary for the District Attorney to recapitulate the prior proceedings by briefly summarizing the previous testimony. The grand jurors are sometimes uncertain as to whether they may vote.
Under the present Grand Jury procedure no record is kept of the numerical tally. Only the panel’s decision is recorded. It is, therefore, impossible to determine who voted or how they voted. It may well be that jurors who have not heard essential evidence participate in the vote and, conceivably, they may be crucial to the concurrence of 12 jurors necessary to indict.
These procedures have developed and continued without close judicial scrutiny or frequent challenge largely because of the secrecy that traditionally attends Grand Jury proceedings *733 and in reliance on the presumption of regularity. Underlying these policy considerations are a practical concern and a desire to avoid and discourage dilatory litigation that will slow still further a criminal process that is already distressingly complex and tortuous.
The issue is: does the possibility of substantial irregularity in the limited situation outlined above justify abridging the secrecy of the Grand Jury vote in order to afford a defendant a realistic opportunity to rebut the presumption of regularity?
Absent such abridgement, arguably, the court will constantly be confronted with the mathematical possibility of a substantial irregularity without the capacity factually to determine whether the indictment is indeed defective under CPL 210.35 (subd 3).
Some of the objectives promoted by the policy of secrecy prior to indictment do not continue to require secrecy once the indictment has been voted and the defendant arraigned (e.g., to protect the reputations of those investigated but not indicted; to prevent the forewarning and flight of those accused before publication of the indictment).
Indeed, the wall of secrecy around Grand Jury proceedings has slowly been eroded. The CPL permits a defendant to file a motion to inspect Grand Jury minutes for the purpose of determining whether the evidence before the Grand Jury was "legally sufficient to support the charges” (CPL 210.30, subd 2). If the court determines, upon the filing of such a motion, that there is "reasonable cause to believe that the grand jury evidence may not have been legally sufficient,” the court must grant the motion to inspect the Grand Jury minutes (CPL 210.30, subd 3). Moreover, upon the motion of the defendant, discovery must be ordered with respect to any recorded testimony given by the defendant before the Grand Jury which filed the indictment (CPL 240.20, subd 1; see, also, A.B.A. Standards Relating to Discovery and Procedure Before Trial, § 2.1).
The CPL declares that the Grand Jury is to be impaneled by the court and is to constitute a part of such court (CPL 190.05). The instructions which the Grand Jury receives must be recorded in the minutes (CPL 190.25, subd 6), and they are, of course, subject to review by the court so that it may determine whether there has been an impairment of the Grand Jury’s integrity and prejudice to the defendant may *734 result (CPL 210.35, subd 5; People v Percy, 45 AD2d 284, affd 38 NY2d 806).
Finally, CPL 190.25 (subd 4), permits disclosure of "the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding” on written order of the court.
There is no reason to believe that the secrecy of Grand Jury proceedings was ever intended to perpetuate error or conceal defects. "Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings, for the Grand Jury is an 'arm of the court’ ” (cites omitted). (People v Ianniello, 21 NY2d 418, 424.)
Procedures can be devised which will protect the independence of action and freedom of deliberation of the Grand Jury without insulating the most crucial of all its proceedings, the vote, from scrutiny by the court. There is little justification for prospectively relying on the presumption of regularity where there is a substantial possibility of irregularity or defect and the facts can be made readily available without significantly burdening or delaying the processes of the Grand Jury.
The Grand Jury is interposed "to afford a safeguard against oppressive actions of the prosecutor or a court” (United States v Cox, 342 F2d 167, 170, cert den sub nom Cox v Hauberg, 381 US 935). The decision to hale a person into a court is a serious one, and subject to official abuse. For this reason the concurrence of 12 citizens is required before a defendant is tried on a felony charge (see Stirone v United States, 361 US 212, 218). An indictment found without that concurrence is defective and must be dismissed (CPL 210.35, subd 3; CPL 210.20, subd 1, par [c]). Reliance on the presumption of regularity under present procedures leaves that right unprotected and, when infringed, without effective remedy. The presumption of regularity is irrebuttable so long as the court or the defendant cannot know the essential facts.
It must be acknowledged that, if the Grand Jury is an arm of the court, it is also an instrument of the prosecution operating to a degree as a rubber stamp and, on occasion, as a powerful engine of discovery. It generally affirms what the prosecutor calls upon it to affirm; it investigates as it is led; it indicts or fails to indict as the prosecutor "submits” that it should. The unchallenged assertion of power inevitably leads to abuse. The court, therefore, is obliged to scrutinize the *735 Grand Jury’s assertion of power in order to assure that it is in accord with the law.
I have, for the above reasons, concluded that, in those cases where the presentation to the Grand Jury is continued beyond one day and the composition of the panel may, therefore, vary on succeeding days, certain additions to, and modifications of, the present procedures are required. I am reasonably sure that these changes can be effected without delaying or disrupting the operation of the Grand Jury and without prolonging the period from indictment to trial.
First, the court which impanels the Grand Jury should charge that those grand jurors who join in an indictment must have been present and must have heard the essential and critical evidence. (Cf. Yankwich, Charge to Federal Grand Jury, 19 FRD 117, 119.) Additionally, the Assistant District Attorney should, in his instructions to the panel immediately prior to the vote, charge the Grand Jury to the same effect. These brief, prophylactic instructions by the legal advisors to the Grand Jury (CPL 190.25, subd 6) will impose no cognizable burdens. Their purpose is to orient and inform the jurors as to the nature of their role in a particular case. Such instructions are necessary, but they may not be sufficient in a significant number of cases. Many Grand Jury submissions are, as previously noted, continued a number of times over a number of weeks. Juror attendance may vary on each occasion. Those jurors who fail in attendance on a given day do not know what cases were heard or what evidence taken.
The problem is not insuperable. The Assistant District Attorney in charge of the submission presently has available to him the attendance records of the panel. He knows which grand jurors were present when the essential evidence was submitted.
The District Attorney should, therefore, in his capacity as legal advisor to the Grand Jury, inform the panel as to which of its members, in his legal opinion, may vote. This opinion is to be based on the attendance records and his awareness of what evidence was submitted on any given day. This does not appear to be a burdensome requirement; the instructions are brief and the records are already available. Problems of delay may arise if the panel has had many meetings over a long period of time. In such a case there may not be a group of 12 jurors that have heard all the essential and critical evidence. It may then be necessary to recall witnesses or read prior *736 testimony. The alternative would be to acquiesce in a procedure that would permit a grand juror to vote to indict without having heard the essential evidence. That alternative is not legally acceptable.
This court will not, in the future, overlook a failure on the part of the District Attorney to instruct the Grand Jury in the manner indicated above. Such an omission will be viewed as a violation of CPL article 190 of such a degree that the court may conclude that the Grand Jury’s integrity was impaired and prejudice to the defendant may result (CPL 210.35, subd 5). The dismissal of the indictment will then be mandated unless the prosecutor can show the absence of prejudice. In my view that can only be done by requiring the Grand Jury secretary to record the votes and the identities of the voting grand jurors.
A numerical tally of votes is presently kept by Federal Grand Juries. (See Lustiger v United States, 386 F2d 132, 139; 8 Moore, Federal Practice, par 6.02 [2] [Cipes ed, 1968].) The Federal Grand Juries do not, however, record the votes upon an indictment by individual grand jurors. Our law appears to permit the secretary to the Grand Jury to keep such records and to disclose them upon written order of the court (CPL 190.20, subd 3; CPL 190.25, subd 4).
Recording and disclosing the votes of individual grand jurors is unprecedented in our law and risks interference with the freedom of deliberation that should attend Grand Jury proceedings. It should, therefore, not be required unless other procedures fail to provide reasonable assurance that there is no substantial possibility of irregularity or defect. The requirement that prosecutors, in continued cases, advise the grand jurors in the manner indicated above supplies the assurance necessary. There is still the possibility, remote in my view, that a Grand Jury will willfully disregard the prosecutor’s instructions. But any Grand Jury so disposed could not, in any event, be relied on to provide accurate records.
While there may be many reasons for the creation of presumptions, the most important consideration is probability. Reliance on the presumption that Grand Jury proceedings have been regularly and legally performed is justified on grounds of probability where that Grand Jury has been properly advised and instructed, but not otherwise.
I have concluded, as indicated above, that the failure to charge the Grand Jury in this case should not lead to the *737 dismissal of the indictment. The procedure followed here was not clearly in violation of either statute or precedent and would have to be upheld under Brinkman (supra). The court today, in effect, declares "new law” pursuant to its obligation to assure the integrity of Grand Jury proceedings and to prevent possible prejudice to defendants.
To require that all similar indictments in pending cases be dismissed and the defendants reindicted would work a major dislocation in the administration of justice in this jurisdiction. It is appropriate to take account of this factor in determining the retroactive application of the decision (Stovall v Denno, 388 US 293; Johnson v New Jersey, 384 US 719; Tehan v Shott, 382 US 406; Linkletter v Walker, 381 US 618). In the public interest the chief factor determining prospectivity is the actual disruption retroactive application of a decision would cause.
I do not denigrate the right of indictment by a Grand Jury when I find, as I do, that whatever infringement of that right is allowed by wholly prospective application of this ruling is outweighed by the danger of serious further aggravation of our speedy trial crisis.
The same considerations of efficient administration of justice do not apply to indictments to be brought in the future. Henceforth, the District Attorney is on notice that the indictment procedure followed in this case is defective.
The defendants’ motion for an order dismissing the indictment is denied.